UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

EDWARD A. KELLY,

                      Plaintiff,                      07-CV-6302

v.                                                               **DECISION**
                                                                   **And ORDER**

JO ANNE BARNHART,
COMMISSIONER OF
SOCIAL SECURITY,

                      Defendant.

_____

## INTRODUCTION

Plaintiff, Edward A. Kelly ("Kelly" or "plaintiff") brings this action pursuant to the Social Security Act, codified at 42 U.S.C. § 405(g) and 1383(c)(3), seeking review of a final decision of the Commissioner of Social Security, denying his application for Disability Insurance Benefits ("DIB").

The Commissioner moves for judgment on the pleadings on the grounds that the ALJ's decision was correct, was supported by substantial evidence, and was made in accordance with applicable law. For the reasons discussed below, the Commissioner's motion for judgment on the pleadings is granted.

## BACKGROUND

On January 13, 2004 plaintiff Edward A. Kelly, a thirty-nine year old with an Associates Degree in Liberal Arts/General Sciences filed an application for disability insurance benefits claiming that he had become unable to work as a salesman as of April 15, 2002 because of manic depressive disorder, auditory hallucinations, bipolar disorder, and anxiety attacks. (Tr. 77-80, 132). The application was denied initially and on reconsideration by the State Disability Determination

Service on March 18, 2004. (Tr. 24). Plaintiff requested an administrative hearing which was held on June 27, 2006, at which hearing plaintiff was represented by an attorney. (Tr. 492-510).

On July 25, 2006 the ALJ determined based on the hearing and the evidence in the record that plaintiff did not suffer from a disability under the Social Security Act. A disability is defined by 42 U.S.C. § 423(d) as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months…" 42 U.S.C. § 423(d)(1991). The ALJ determined that plaintiff was not engaged in substantial gainful activity; that plaintiff had bipolar disorder, anxiety and drug abuse and alcoholism which are severe impairments; that plaintiff's conditions met Section 12.09 in 20 C.F.R. Part 404, Subpart P, Appendix 1; that if the plaintiff stopped his substance abuse, he still would not have the capacity to perform his past relevant work; that even if plaintiff stopped his substance abuse he would not have an impairment or combination of impairments that would meet or equal any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; and that if the plaintiff stopped his substance abuse that he would have the residual functional capacity to perform work at all exertional levels and would be capable of performing work that required the attention and concentration to do simple tasks. (Tr. 26-30). On November 19, 2005 Kelly's appeal of the ALJ's decision to the Appeals Council was denied, and on the plaintiff filed this action. (Tr. 6-9).

**DISCUSSION**

I.   Jurisdiction and Scope of Review

42 U.S.C. § 405(g) grants jurisdiction to district courts to hear claims based on the denial of Disability Insurance Benefits. That section also directs that when considering such a claim, the court must accept the findings of fact made by the Commissioner, provided that such findings are

supported by substantial evidence in the record.  Substantial evidence is defined as " such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938).  Section 405(g) thus limits the court's scope of review to determining whether or not the Commissioner's findings are supported by substantial evidence.  See, Mongeur v. Heckler, 722 F.2d 1033, 1038 (2nd Cir. 1983) (finding that the reviewing court does not try a benefits case de novo).  The court is also authorized to review the legal standards employed by the Commissioner in evaluating the plaintiff's claim.

"Though [the court] must credit an ALJ's findings if supported by substantial evidence, we retain a responsibility to conduct a searching inquiry and to scrutinize the entire record, having in mind that the Social Security Act…is remedial in purpose." *citing* McBrayer v. Secretary of Health and Human Services, 712 F.2d 795, 798-99 (2nd Cir. 1983); Dousewicz v. Harris, 646 F.2d 771, 773 (2nd Cir. 1981).  Defendant asserts that the decision was reasonable and is supported by the evidence in the record, and moves for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.  Under Rule 12(c), judgment on the pleadings may be granted where the material facts are undisputed and where judgment on the merits is possible merely by considering the contents of the pleadings.  Sellers v. M.C. Floor Crafters, Inc., 842 F.2d 639 (2nd Cir. 1988).  If, after a review of the pleadings, the court is convinced that "the plaintiff can prove no set of facts in support of [his] claim which would entitle [him] to relief," judgment on the pleadings may be appropriate.  See, Conley v. Gibson, 355 U.S. 41, 45-46 (1957).  Because the court determines that the findings of the Commissioner are supported by substantial evidence judgment on the pleadings is hereby granted for the defendant.

II.   Medical History.

On May 8, 2002 Kelly was admitted to Park Ridge Chemical Dependency for substance abuse. (Tr. 422). JoAnn Hoefler, R.N. noted that the plaintiff was discharged "incomplete" on May 15, 2002. Id.

On June 4, 2002 the plaintiff underwent a CT scan of his head to evaluate if there was any internal bleeding. (Tr. 418). Brianna Taing, M.D. noted that the results of the CT scan were normal. Id. The plaintiff was seen in St. Mary's Hospital Inpatient Psychiatric Unit on June 5, 2002 for suicidal ideation. (Tr. 419). Kelly reported that he has had a chemical dependency problem since he was 22 years old and that he drank alcohol and smoked cocaine. The plaintiff stated that his depression had been ongoing for 3-4 years. Id.

From November 18-26, 2002 the plaintiff received inpatient treatment at the John L. Norris Addiction Treatment Center. (Tr. 345-63, 191-93). Kelly stated that he had a 25 year history of drug and alcohol related problems. (Tr. 361). The plaintiff stated that he has had 20-30 previous treatment attempts. (Tr. 362) and had previously undergone treatment at Main Quest Detox in 2001, Strong MICA in 2001, Teen Challenge Residential in 2001, and Park Ridge Chemical Dependence, at which he remained for only three days. (Tr. 361). In the Psychological Assessment the plaintiff stated that he was unable to remain sober and that he usually used $200 worth of cocaine weekly. (Tr. 345). In the Psychosocial Assessment it was noted that the plaintiff hears voices and gets depressed when he is using cocaine. (Tr. 346, 362).

Upon physical examination, the plaintiff had no problems and upon mental examination, his orientation, memory, mood, and consciousness were all normal. (Tr. 353-56). During the examination the plaintiff was alert, organized, displayed good judgment, and was articulate. (Tr. 346). The plaintiff's thought processing was logical and coherent and there was no suicidal

ideation, homicide ideation or perceptual disturbances. (Tr. 362). It was noted that the plaintiff displayed no regard for societal norms with a strong sense of entitlement and minimal true insight. Kelly made no discernible gains during his time in the treatment program and was described as arrogant, demanding, manipulative and entitled. Id. The plaintiff stated that he was gainfully employed. (Tr. 363). Kelly was diagnosed by Sarah Atkinson, M.D. with a history of substance induced mood/psychotic disorder that has largely resolved. (Tr. 358, 362). The final diagnosis included alcohol, cocaine and nicotine dependence, and antisocial personality disorder. (Tr. 363).

The plaintiff sought treatment at St. Mary's Hospital Unity Health System on December 13, 2002. (Tr. 196-202). The plaintiff was admitted to the Genesee Street Campus, where he remained until December 20, 2002. (Tr. 196-97). Kelly claimed that he was hearing voices that told him to hurt himself and others. (Tr. 198-99). He later denied suicidal ideation and stated that he had been using cocaine daily for the last couple weeks. (Tr. 200). The plaintiff's past medical history included depression, bipolar disorder, and cocaine abuse. (Tr. 198). Kelly stated that he knew his main problem was his chemical dependency. (Tr. 196). It was noted that the plaintiff's auditory hallucinations cleared up rapidly and that he was oriented to time, person and place. Id. Leon Canapary diagnosed the plaintiff with substance abuse mood disorder and cocaine and alcohol dependency. (Tr. 197).

Kelly agreed to a transfer to Park Ridge Unity Health System and remained there from December 20, 2002 to January 6, 2003. (Tr. 207-09). The plaintiff was diagnosed with cocaine, alcohol and nicotine dependence and a depressive disorder. (Tr. 207). It was noted that the plaintiff appeared to have traits of anti-social personality and narcissism. Id. Kelly's relapse potential was evaluated as high and his prognosis was poor. (Tr. 209).

After continuing to abuse cocaine the plaintiff again sought treatment at Clifton Springs Hospital and Clinic from April 23 to May 14, 2003. (Tr. 210-27). Dr. Ellis Levy noted that the plaintiff's thought processes were beyond goal oriented, his thought content was appropriate, and his insight and judgment were preserved. (Tr. 210, 227). Kelly continued to claim auditory hallucinations and depression. Id. On April 23, 2003 Dr. Levy diagnosed the plaintiff with bipolar disorder, depression, and polysubstance dependence. (Tr. 213).

On September 10, 2003 state agency review psychiatrist, Hillary Tzetzo, M.D., concluded that there was insufficient evidence to assess the plaintiff's mental impairment and noted that the plaintiff failed to attend his consultative examination. (Tr. 232-245).

On December 10, 2003 the plaintiff underwent a social and psychological assessment by psychologist, Martin G. Lineham, Ph.D. (Tr. 279-83). Kelly's principal complaint was that he was depressed and was having difficulty because of drugs in his life. (Tr. 280). Dr. Lineham opined that the plaintiff's hallucinations may be related to his drug use, but that it was difficult to ascertain to what extent they may be related to drug use. (Tr. 280, 282). Kelly denied any current hallucinations and suicidal or homicidal ideation. (Tr. 282). The plaintiff's thoughts were coherent and logically expressed, he was oriented to time, place and person, and his recent and remote memory were intact. (Tr. 282). Dr. Lineham diagnosed the plaintiff with cocaine, alcohol and nicotine dependence and a depressive disorder, not otherwise specified. (Tr. 283).

On January 27, 2004 Dr. Lineham wrote a letter concerning the plaintiff's condition. (Tr. 272). The letter stated that Kelly was initially seen on October 23, 2003 and was then diagnosed with depression with psychotic features, ruling out psychotic disorder not otherwise specified, and ongoing problems with drug use. Dr. Lineham noted that the plaintiff had a recent return of his psychotic symptoms and needed to stay in the psychiatric inpatient unit for five days.

Id. Dr. Lineham wrote another letter on February 26, 2004 stating that the plaintiff is currently not ready to return to work, but is anticipated to return to work on April 12, 2004. (Tr. 271). On April 5, 2004 Dr. Lineham wrote another letter stating that the plaintiff's medications include Zyprexa, Risperdal, Gabitril, Wellbutrin, Cogentin, and Trazedone and estimated that the plaintiff would be able to return to work on May 31, 2004. (Tr. 270).

Kelly continued to receive treatment from Dr. Lineham and psychiatrist, Muhammad Dawood, M.D., from January 16, 2004 through March 2004. (Tr. 284-88). After an appointment on February 26, 2004 the plaintiff stated that he was hearing voices that were urging him to drink. (Tr. 287).

On March 11, 2004 Dr. Tzetzo again was unable to assess the plaintiff's mental impairments because she had insufficient evidence. (Tr. 251, 256-69).

The plaintiff was psychiatrically evaluated by Dr. Dawood on March 25, 2004. (Tr. 276-78). Upon examination Kelly's motor activity was slightly slowed down, his speech was relevant and coherent, his thought process was goal oriented with no thought disorder noted, his insight and judgment were fair, and his sensorium functions were clear and alert. (Tr. 276-77). Dr. Dawood diagnosed the plaintiff with depressive disorder not otherwise specified, dysthymic disorder, major depressive disorder recurrent with psychotic features, bipolar disorder with depression and cocaine dependence. (Tr. 277-78).

Kelly continued to receive treatment from Drs. Lineham and Dawood from April 1, 2004 to April 29, 2005. (Tr. 289-312). On June 1, 2004 Dr. Lineham opined that the plaintiff's diagnosis was consistent with bipolar disorder, and depression with psychotic features. (Tr. 293). On December 29, 2004, therapist Joseph Weber opined that Kelly was safe to be in the community. (Tr. 306).

In a letter dated April 5, 2004 Dr. Lineham noted that the plaintiff was currently experiencing psychotic symptoms that would make it hard for him to work. (Tr. 270). Dr. Lineham estimated that the plaintiff should be able to return to work on May 31, 2004. Id.

On August 13, 2004 the plaintiff admitted himself to Park Ridge Hospital after binging on crack cocaine and hearing auditory hallucinations that told him to jump off a bridge. (Tr. 473-74). Kelly was discharged on August 20, 2004 well-oriented, fair insight and judgment, without any suicidal or homicidal ideation or auditory or visual hallucinations. (Tr. 473).

The plaintiff was treated at the Unity Health System Walk-in Care Center on June 20, 2004. (Tr. 402-10). It was noted that the plaintiff was paranoid, hallucinating, had suicidal thoughts and his condition was moderately severe. (Tr. 402, 407).

On November 27, 2004 Kelly was treated at Clifton Springs Hospital and Clinic for complaints of depression and auditory hallucinations. (Tr. 334-43). The plaintiff had been using cocaine, alcohol and marijuana and it was noted that his auditory hallucinations and depression worsen when he takes drugs. (Tr. 334-36). Kelly's physical appearance, behavior, speech and thought process were all normal except that his speech was mildly slow and he was moderately confused. (Tr. 338).

Kelly again sought treatment at Clifton Springs Hospital and Clinic on February 11, 2005 to help him slowing down his thoughts, and for suicidal hallucinations and suicidal ideation. (Tr. 323-32). The plaintiff stated that he last used crack cocaine "yesterday." (Tr. 323). Kelly was diagnosed with bipolar disorder mixed with psychotic features, opiate dependence and a personality disorder not otherwise specified. (Tr. 331).

A Mental Residual Functional Capacity Questionnaire was completed on November 29, 2005 by Muhammad Dawood, M.D. (Tr. 365-66) who had first started treating the plaintiff on October

23, 2003. (Tr. 365). Dr. Dawood stated that the plaintiff's impairment lasted or can be expected to last at least 12 months and that the plaintiff's current treatment indicates a continuation of ongoing problems from the past. Kelly's experience of symptoms were severe enough to constantly interfere with his ability to get along with and function with others cooperatively in a work setting. The plaintiff's depression and psychosis led to a marked limitation in his ability to deal with work stress. Dr. Dawood opined that the plaintiff's ability to handle work demands, maintain persistence and expectations, focus, organize, and complete tasks timely were frequently impaired by his symptoms. The plaintiff's depression symptoms included feeling guilty, loss of energy and fatigue, sleep disturbance, reduced social function, and a restriction in daily activities, hobbies and joy. Id. Dr. Dawood opined that Kelly's physical and mental limitations were caused or exacerbated by the drug use and that if the drug use were to stop that the plaintiff's remaining mental and physical limitations would not be disabling. Id.

Kelly admitted himself to the Veteran's Administration Medical Center ("VAMC.") at Canandaigua on December 15, 2005 for depression and cocaine use. (Tr. 448-50). The plaintiff admitted to using crack cocaine three days before admittance. (Tr. 448). Psychologist Daniel A. Brooks, M.D. noted that the plaintiff had no cognitive impairment and the reason for his psychiatric deterioration was cocaine abuse and noncompliance. Id. Dr. Brooks interviewed the plaintiff and noted that the plaintiff's behavior was controlled, his speech was fluent, his sensorium, orientation and long term memory were intact, his mood was "very good", his judgment and insight were good, his thought content was negative for detectable delusions or auditory or visual hallucinations, and the plaintiff denied suicidal or homicidal ideations. (Tr. 449). Dr. Brooks diagnosed the plaintiff with bipolar disorder I, most recent episode depressed, and cocaine abuse. Kelly was discharged on January 3, 2006 and transferred to Ward 9B for rehabilitation. Id.

On March 19, 2006 the plaintiff was treated at the VAMC in Bath, New York. (Tr. 475-77). Kelly was diagnosed with bipolar disorder, joint pain in his left ankle, hyperlipidemia, tobacco use disorder, insomnia, chronic prostatitis, and a history of alcohol and cocaine dependence in early remission. (Tr. 475). Nurse practitioner, Richard Chrzanowski noted that the plaintiff had undergone an x-ray of his lumbar spine and pelvis on April 12, which was negative. (Tr. 476). On April 22, 2006 the plaintiff was given an irregular discharge when he decided to leave the facility early and stated that he was feeling frustrated and the he did not feel a desire to use or experience thoughts of self-harm. Id. The plaintiff's discharge diagnosis was polysubstance abuse and bipolar disorder and appeared competent, employable and showed no known malignancies at the time of discharge. (Tr. 477).

On March 19, 2006 Kelly sought treatment at Strong Memorial Hospital's Emergency Department for psychosis NOS and cocaine dependence. (Tr. 451-72). The plaintiff complained that he was hearing voices telling him to hurt himself and others. (Tr. 453). Kelly's current medications included Gabatril, Rasperdal, Trazadone, Abilfy, Haldol, Wellbutrin SR. (Tr. 453, 461). Kelly stated that he hasn't taken his medication in three weeks. (Tr. 463). At the plaintiff's second interview he admitted that he really came to the Emergency Department because he had no place to stay and wanted to be admitted to ALR. (Tr. 457). Kelly told Deborah Clark, BSRN that the had used crack cocaine 2 months before admittance. (Tr. 459). John Rozel, M.D. examined the plaintiff and found that the plaintiff's psychotic complaints were not evident at the examination. (Tr. 463).

In a letter dated April 20, 2006 Drs. Lineham and Dawood stated that the plaintiff had a long history of mental health treatment for mood and psychotic symptoms that have rendered him unable to work for an extended period of time. (Tr. 491). The doctors further opined that it is possible that the plaintiff's drug use represents an attempt to self medicate and that he reported hallucinatory

symptoms even when he told them he was clean. However, the doctors concluded that it would take an extended period of abstinence before it was possible to say definitively that his substance abuse is reactive to his mental illness. Id.

> III. The Plaintiff Has Not Met His Burden Of Proving That He Suffers From A Disabling Condition Absent His Drug Abuse.

The ALJ's determination that the plaintiff, despite meeting the disability establishing criteria under § 12.09 of 20 C.F.R. Part 404, Subpart P, Appendix 1, is not entitled to disability benefits, is premised on 42 U.S.C. § 423(d)(2)(C) and 1382c(a)(3)(J), which provides that a claimant found to be disabled will not be considered disabled within the meaning of the Act "if alcoholism or drug addiction would (but for this subparagraph), be a contributing factor material to the Commissioner's determination that the individual is disabled." *Quoting* 42 U.S.C. § 1382c(a)(3)(J). Under 20 C.F.R. § 404.1535(a) the determination of whether the plaintiff's drug addiction or alcoholism is a contributing factor is whether the claimant would still meet the definition of disabled under the Act if he stopped using the alcohol or drugs. 20 C.F.R. § 404.1535(b)(1). If it is determined that claimant's remaining limitations after abstaining from his drug use would not be disabling, the claimant's drug addiction or alcoholism will be found a contributing factor material to the determination of disability, and benefits will be denied. 20 C.F.R. § 404.1535(b)(2); Frankhauser v. Barnhart, 403 F.Supp.2d 261, 272 (W.D.N.Y. 2005). Furthermore, when the record reflects substance abuse, it is the claimant's burden to prove that substance abuse is not a contributing factor material to the disability determination. Frankhauser, 403 F.Supp.2d at 273; Eltayyeb v. Barnhart, 2003 WL 22888801, 4 (S.D.N.Y., 2003); Ball v. Massanari, 254 F.3d 817, 821 (9th Cir. 2001); Doughty v. Apfel, 245 F.3d 1274, 1281 (11th Cir.2001); Mittlestedt v. Apfel, 204 F.3d 847, 852 (8th Cir.2000); Brown v. Apfel, 192 F.3d 492, 498 (5th Cir.1999).

The record establishes a direct connection between the plaintiff's drug abuse and his symptomalogy. In the Psychosocial Assessment taken at the John L. Norris Addiction Treatment Center during plaintiff's stay from November 18-26, 2002 it was noted that the plaintiff hears voices and gets depressed when he is using cocaine. (Tr. 346). In the Release/Discharge Summary from the John L. Norris Addiction Treatment Center it was reported that the plaintiff "heard voices in depression while using cocaine." (Tr. 192, 362). In a letter dated April 20, 2006 Drs. Lineham and Dawood concluded that it would take an extended period of abstinence before it was possible to say definitively that his substance abuse is reactive to his mental illness and not the other way around. (Tr. 491).

The record contains substantial evidence that the plaintiff's drug abuse materially contributed to the symptoms he experienced. Many of the plaintiff's treatments were initiated by symptoms caused or exacerbated by frequent drug use. On December 13, 2002 Kelly admitted himself to St. Mary's Hospital Unity Health System because he was hearing voices that told him to hurt himself and others. (Tr. 198-99). During his treatment Kelly later denied suicidal ideation and stated that he had been using cocaine daily for the last couple weeks. (Tr. 200). At this time Kelly stated that he knew his main problem was his chemical dependency. (Tr. 196). It was noted that after receiving treatment and abstaining from drug use the plaintiff's auditory hallucinations cleared up rapidly and that he was oriented to time, person and place. Id. On August 13, 2004 the plaintiff admitted himself to Park Ridge Hospital after binging on crack cocaine and subsequently hearing auditory hallucinations that told him to jump off a bridge. (Tr. 473-74). After sobering up for seven days Kelly was discharged well-oriented, with fair insight and judgment, and without any suicidal or homicidal ideation or auditory or visual hallucinations. (Tr. 473). On November 27, 2004 Kelly was treated at Clifton Springs Hospital and Clinic after admitting to using cocaine, alcohol and

marijuana. (Tr. 334-43). In this report it was noted that the plaintiff's auditory hallucinations and depression worsen when he takes drugs. (Tr. 334-36).

Treating physicians, Drs. Dawood and Lineham's opinions lend support to the ALJ's finding that the plaintiff's drug use is a material contributing factor. On December 10, 2003, treating psychologist Dr. Lineham opined that the plaintiff's hallucinations may be related to his drug use, but that it was difficult to ascertain to what extent they may be related. (Tr. 280, 282). In a Mental Residual Functional Capacity Questionnaire on November 29, 2005, treating psychologist Dr. Dawood went further and concluded that Kelly's physical and mental limitations were caused or exacerbated by his drug use and that if his drug use were to stop that Kelly's remaining mental and physical limitations would not be disabling. (Tr. 366).

There is substantial evidence in the record that supports the ALJ's finding that the plaintiff is not disabled if he abstains from drug use. There are many instances in which the plaintiff underwent substance abuse treatment and exhibited employable traits and abilities. Upon examination at the John L. Norris Addiction Treatment Center from November 18-26, 2002 the plaintiff's orientation, memory, mood, and consciousness were all normal. (Tr. 353-56). During the examination the plaintiff was alert, organized, displayed good judgment, and was articulate. (Tr. 346). The plaintiff's thought processing was logical and coherent and there was no suicidal ideation, homicide ideation or perceptual disturbances. (Tr. 362). At Clifton Springs Hospital and Clinic Dr. Levy noted that the plaintiff's thought processes were beyond goal oriented, his thought content was appropriate, and his insight and judgment were preserved. (Tr. 210, 227). On December 10, 2003 Dr. Lineham concluded that the plaintiff's thoughts were coherent and logically expressed, he was oriented to time, place and person, and his recent and remote memory were intact. (Tr. 282). After being admitted to Clifton Springs Hospital and Clinic on November 27, 2004 it was

noted that Kelly's physical appearance, behavior, speech and thought process were all normal except that his speech was mildly slow and he was moderately confused. (Tr. 338).

Dr. Brooks interviewed the plaintiff on January 1, 2006 and noted that the plaintiff's behavior was controlled, his speech was fluent, his sensorium, orientation and long term memory were intact, his mood was "very good", his judgment and insight were good, his thought content was negative for detectable delusions or auditory or visual hallucinations, and the plaintiff denied suicidal or homicidal ideations. (Tr. 449). The plaintiff's discharge diagnosis from the VAMC. at Bath on March 19, 2006 indicated that the plaintiff appeared competent, employable and showed no known malignancies. (Tr. 477).

Substantial evidence in the record supports the ALJ's finding that the plaintiff's drug addiction is a material contributing factor to the Commissioner's determination that the individual is disabled and the plaintiff does not meet the definition of disabled under the Act if he stopped using the drugs.

IV.     The Plaintiff Was Not Compliant with his Prescribed Treatment.

Compliance with prescribed treatment that is capable of restoring a plaintiff's ability to work is required to obtain benefits, unless there is a good reason for not following prescribed treatment. 20 C.F.R. § 404.1530. The claimant's mental limitations are taken into account in determining whether the claimant has an acceptable reason for not following his prescribed treatment. 20 C.F.R. §§ 404.1530(c). Courts considering whether a good reason supports a claimant's failure to comply with prescribed treatment have recognized that psychological and emotional difficulties may deprive a claimant of "the rationality to decide whether to continue treatment or medication." Thompson v. Apfel, 1998 WL 720676, 6 (S.D.N.Y. 1998). The plaintiff has consistently failed to take his prescribed medications as evidenced by the notes of his physicians. (Tr. 210, 324, 448, 463).

There are many documented instances in the record that demonstrate the plaintiff's noncompliance with his prescribed treatment. In a report dated May 14, 2003 Dr. Levy noted that the plaintiff had not taken his medication for a few days. (Tr. 210). In the plaintiff's Behavioral Health Evaluation at Clifton Springs Hospital and Clinic on February 11, 2005 the plaintiff reported that he was noncompliant with his psycho tropic medications. (Tr. 324). While the plaintiff was being treated at the VAMC. at Canandaigua on December 15, 2005, Dr. Brooks opined that the plaintiff had no cognitive impairment and the reason for his psychiatric deterioration was cocaine abuse and noncompliance. .(Tr. 448). After admittance to Strong Memorial Hospital's Emergency Department on March 19, 2006 Kelly stated that he hadn't taken his medication in three weeks. (Tr. 463). In a report dated May 19, 2006 from Dr. Rozel of Strong Memorial Hospital, Dr. Rozel noted that the claimant had not taken his medication in three weeks.

The plaintiff's noncompliance with his prescribed treatment has been linked to his persistent illicit drug use and not his mental impairments. The plaintiff's drug use is not a good reason for noncompliance with his prescribed treatment and therefore he is barred from obtaining DIB. 20 C.F.R. § 404.1530.

## CONCLUSION

For the reasons set forth above, I grant Defendant's motion for judgment on the pleadings, and dismiss plaintiff's complaint with prejudice.

ALL OF THE ABOVE IS SO ORDERED.

S/Michael A. Telesca
_____
MICHAEL A. TELESCA
United States District Judge

Dated:   Rochester, New York
         March 28, 2008